Date signed October 10, 2013



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## at GREENBELT

| | |
|---|---|
| In Re: | |
| Wayne J. Carter | Case No.    13-25253-TJC |
| Debtor | Chapter     11 |

### Memorandum of Decision

Industrial Bank (the "Bank"), joined by the United States Trustee (the "UST"), seeks dismissal of this bankruptcy case as a bad faith filing by Wayne J. Carter (the "Debtor"), who opposes dismissal. The court held a hearing on the motion to dismiss on September 25, 2013. For the reasons stated herein, the court will dismiss the case.

### Findings of Fact

The findings of fact are determined primarily from the Debtor's previous cases, which include the docket record and the court's findings and conclusions made in those cases.[1]

*The 2007 Case*.

On March 5, 2007, Debtor filed a petition for relief under chapter 11, initiating case number 07-12031 (the "2007 Case"). The Bank filed Proof of Claim No. 8 asserting a secured

---

[1] The court takes judicial notice of these matters of record. Fed. R. Evid. 201.

1

claim of $496,412.13.  The Debtor did not dispute the amount of the claim and contended that the value of the real property that secured the Bank's claim was $725,000.  Docket No. 22 at 10.

The Debtor did not file a plan or disclosure statement and, on September 20, 2007, the UST filed a motion to convert the case to chapter 7.  Docket No. 103.  The motion stated that the Debtor's loss of properties to foreclosure and the likelihood that the Debtor would continue to lose properties would impact the Debtor's income and ability to fund a plan.  As further cause for relief, the motion also stated:

> The Debtor has admitted on each of his filed Monthly Operating Reports that (1) he has paid bills that he owed before he filed bankruptcy (for which he did not receive this Court's permission); (2) he paid his attorney or other professionals (for which he did not receive this Court's permission); (3) he did not pay his bills on time; (4) he has not filed his returns and/or paid all of his taxes for the month; and (5) he borrowed money (for which he did not receive this Court's permission).

*Id.* at 5.  Finally, the motion asserted that dismissal or conversion was appropriate because the Debtor failed to file a plan of reorganization and disclosure statement in the case.  Although the Debtor initially filed an opposition to the motion, he consented to the dismissal of the case by order entered on October 30, 2007.  Docket No. 117.

***The 2009 Case.***

On March 30, 2009, the Debtor filed a petition for relief under chapter 13, initiating case number 09-15398 (the "2009 Case").  The Bank filed Proof of Claim No. 3 asserting a secured claim of $550,318.47.  The Bank also filed an objection to the chapter 13 plan, noting that the case was filed one day before its scheduled foreclosure sale, and stating that the Debtor had not paid property taxes on the property from 2004 through the filing of the case.  Docket No. 28.  The Bank raised a number of other objections to the plan, including that the Debtor's income on his schedules was insufficient to make necessary plan payments.  At a confirmation hearing on

2

June 9, 2009, the chapter 13 trustee reported that the Debtor had failed to make any plan payments through the date of the hearing. Docket No. 35. The court denied the plan with leave to amend by July 10, 2009. The Debtor failed to file a plan by July 10, 2009, and the court dismissed the case. The Debtor requested reconsideration of the dismissal order and the court granted the motion and required the Debtor to file a plan by August 28, 2009. Docket No. 48. However, after it was determined that the Debtor exceeded the debt limitations of 11 U.S.C. §109 to be eligible for chapter 13 relief, the case was converted to chapter 11 by order entered on October 20, 2009. Docket No. 79

On March 5, 2010, the UST filed a motion to convert the case to chapter 7 or, in the alternative, to dismiss the case. Docket No. 97. The motion stated that in the five months that elapsed after the case was converted to chapter 11, the Debtor (1) failed to file a plan or disclosure statement; (2) failed to file any monthly operating reports (as established by a review of the docket); (3) failed to pay any quarterly fees to the UST; and (4) paid only $250 of $11,000 of child support payments that had come due at that time. The Debtor initially filed an opposition to the motion, Docket No. 104, but then requested that the UST consent to dismissal of the case, rather than conversion to chapter 7. The UST agreed to dismissal, provided that the Debtor make a payment of $5,000 toward the unpaid child support payments and file his monthly operating reports and pay his quarterly fees. Docket No. 118.

*The 2012 Case*.

On November 6, 2012, the Debtor filed a petition for relief under chapter 11, initiating case number 12-30050 (the "2012 Case"). The case was filed on the eve of another foreclosure sale scheduled by the Bank. *See* Docket No. 41 at 3. The Bank filed Amended Proof of Claim No. 6 asserting a secured claim of $639,078.17.

3

The Debtor again failed to file a plan or disclosure statement and, on April 30, 2013, the UST filed a motion to convert the case to chapter 7 or to dismiss the case. Docket No. 82. The motion was based on several factors. The UST pointed out numerous significant deficiencies and inaccuracies in the Debtor's monthly operating reports filed in the case. Further, because the Debtor's company was paying some of his undisclosed personal expenses, neither his nor his company's financial condition could be accurately determined. The motion stated that the UST had misgivings about the Debtor's stated earnings, particularly in light of the Debtor's recent incarceration for federal mail and wire fraud in connection with misstatements about his income and finances on various loan applications and because the Debtor had not provided any evidence to support his stated income. *Id.* Additionally, the Debtor's bank statements did not show withdrawals that supported the Debtor's claim that he paid some child support payments through cash withdrawals. The UST argued that a lack of information from the Debtor made it impossible to track his income and expenses, particularly in light of the Debtor's assertion that the company paid his personal expenses. Finally, the Debtor was delinquent in paying his quarterly fees. The Bank filed an amended line supporting the UST's motion on May 7, 2013, stating that the Debtor did not generate sufficient income to pay its secured claim. Docket No. 87.

The court held a hearing on the motion on May 21, 2013. The Debtor did not dispute that his monthly operating reports did not accurately account for his income and expenses. The court gave the Debtor twenty-one days to work with his newly-retained accountant to file accurate monthly operating reports.

On June 7, 2013, the Bank filed a supplemental line in support of the UST's motion to dismiss or convert. Docket No. 91. The Bank stated that it learned from a Rule 2004

examination that the Debtor was withdrawing substantial amounts of estate funds at automatic teller machines located in gambling casinos and alleged that the Debtor was gambling with estate funds. *Id*. The Bank pointed out that the Debtor did not account for these funds in his monthly operating reports and argued that gambling with estate funds was grounds for dismissal.

The court held a second hearing on the motion to dismiss the case on June 20, 2013, and heard testimony from the Debtor and his accountant. In a ruling from the bench, the court determined that cause existed to dismiss or convert the case under §1112(b)(1) and that no unusual circumstances existed for not dismissing or converting the case as provided in §1112(b)(2). The court then determined that dismissal, rather than conversion, was in the best interest of creditors and the estate.

In its findings and conclusions, the court first noted that the Debtor's monthly operating reports, as initially filed, were incorrect and incomplete for the first six months of the case. Moreover, the newly-filed amended monthly operating reports established that the Debtor's income was woefully inadequate to file a confirmable and feasible plan. The Debtor's expenses exceeded his income by several thousand dollars during the five months preceding the hearing. In addition, the Debtor was not able to stay current on his post-petition child support payments or income taxes, and therefore owed significantly more in child support and taxes than he did on the petition date. Finally, compelling evidence established that the Debtor made numerous and multiple post-petition withdrawals of estate funds from ATMs located at casinos and was using property of the estate to gamble, and the Debtor failed to rebut or even address that conclusion.[2]

The Debtor filed a motion to reconsider the order dismissing the case on July 1, 2013. Docket No. 103. The UST and the Bank each filed an opposition. Docket Nos. 105 and 106. The court denied the motion to reconsider on August 1, 2013, for several reasons, not the least of

---

[2] At the hearing, the Bank quantified the amount of funds used by the Debtor for gambling as exceeding $6,500.

which was that the Debtor again failed to even address his use of estate funds to gamble.  Docket No. 112.

    *The 2013 Case*.

On September 9, 2013, the Debtor filed a petition for relief under chapter 11, initiating case number 13-25253 (the "2013 Case").  The case was filed on the eve of yet another foreclosure sale scheduled by the Bank.  On September 11, 2013, the Bank filed a motion to dismiss the case and a motion to shorten time to respond to the motion and request for an expedited hearing.  Docket Nos. 10 and 11. The court entered an order expediting the Debtor's response to the motion and setting the hearing for September 24, 2013, later rescheduled for September 25, 2013.

At the hearing, the UST joined the Bank's request to dismiss the case.  The Bank and UST relied on the docket record of the prior cases, as well as the evidence presented and the findings and conclusions made by the court at the June 20, 2013 hearing in the 2012 Case.  The Debtor testified, without any documents or witnesses in support, that his company has entered into contracts with third parties worth millions of dollars that will allow him to confirm a plan.

Subsequent to the hearing, the Debtor filed his Schedules and Statement of Financial Affairs.  On his Schedule D, Creditors Holding Secured Claims, the Debtor lists the Bank's claim as $639,000, and does not contend it is disputed, unliquidated or contingent.  Docket No. 34 at 8.  The Debtor values the real property securing the claim at $585,000.  *Id*.

## Conclusions of Law

In *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989), the Fourth Circuit examined whether "a bankruptcy court may dismiss a voluntary Chapter 11 bankruptcy petition at the very

6

outset because it was not filed 'in good faith.'" *Id*. at 694. The court determined that the "for cause" language in §§362(d) and 1112(b), together with Fed. R. Bankr. P. 9011(a), create an implicit good faith filing requirement in the bankruptcy code. *Id*. at 698-699. The court noted that dismissal at the outset of the case is inherently drastic and a decision that should not be lightly made. It outlined the appropriate standards for bad faith dismissal, concluding that a bad faith dismissal is appropriate only when a showing has been made of "both objective futility and subjective bad faith." *Id*. at 700. The court acknowledged that no generally accepted proof requirements in the application of good faith filings had emerged, and that "proof will inevitably overlap" the two prongs of the inquiry. *Id*. at 701.

### *Subjective Bad Faith*.

In appraising subjective bad faith, the court in *Carolin* stated that the "aim is to determine whether the petitioner's real motivation is to abuse the reorganization process and to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize his financial activities." *Id*. at 702 (citation and internal quotation marks omitted). The court avoided establishing bright line rules in conducting a bad faith inquiry and stated "that a totality of circumstances inquiry is required; that any conceivable list of factors is not exhaustive; and that there is no single factor that will necessarily lead to a finding of bad faith." *Id*. (citations and internal quotation marks omitted).

Here, considering the totality of the circumstances, the court concludes that the filing of this case was an abuse of the reorganization process and the Debtor filed it with subjective bad faith. In his most recent case, the Debtor used over $6,500 of estate funds to gamble. This blatant breach of his fiduciary duties to the creditors and the estate is itself an abuse of the

provisions and purpose of the bankruptcy code. Further, after two hearings and several filings in which the Bank and UST have raised this issue; the Debtor has yet to account for these funds or even address the matter. Moreover, the Debtor was gambling with estate funds while he was failing to pay his child support payments, the arrears of which now exceed $90,000, or his taxes.

This case is the Debtor's fourth case since 2007. The Debtor was given ample opportunity to succeed in each case, the shortest of which was pending for more than seven months. Yet in his three prior chapter 11 cases, he never filed a plan or disclosure statement or made any progress toward reorganization. Each case was dismissed on motion by a creditor or the UST.

Further, this case is the third case filed by the Debtor on the eve of a foreclosure sale initiated by the Bank. As the Debtor points out, filing a bankruptcy petition on the eve of a foreclosure sale is not *per se* bad faith. But filing on the eve of three successive foreclosure sales is a different matter, especially where each foreclosure sale was initiated after dismissal of a prior bankruptcy case for failure to file or confirm a plan. During the course of the Debtor's cases, the Bank's claim increased from $496,412.13 to $639,000, and according to the Debtor, the value of the Bank's collateral has decreased from $725,000 to $585,000. Obviously the Bank has been harmed by the successive and futile filings as its claim has increased by more than $140,000 and it is now substantially undersecured, by the Debtor's own admission.

Finally, the Debtor filed this case less than five weeks after the court denied his motion to reconsider the dismissal of the 2012 Case. In that case, the Debtor was given every opportunity to answer to the gambling claims and establish that a plan was feasible. He did neither. Instead he simply filed a new case seeking to start the process yet again. He has abused the provisions, purpose and spirit of the Bankruptcy Code.

*Objective Futility*.

In determining objective futility, the inquiring court assesses whether "there exists the realistic possibility of an effective reorganization." *See id*. at 698 (citation and internal quotation marks omitted); *In re Premier Automotive Services, Inc*., 492 F. 3d 274, 280 (4th Cir. 2007). This review is in keeping with the principal that "there is embodied in the petition some relation to the statutory objective of resuscitating a financially troubled [Debtor]." *Carolin* 886 F.2d at 701 (citation and internal quotation marks omitted).

The *Carolin* test is the well-established standard for resolving a motion to dismiss a chapter 11 case at its infancy. The standard is so ingrained in bankruptcy practice that its application is seldom questioned. *Carolin*, however, did not involve a serial filing.

In *Carolin*, the rationale behind the court's ruling was clearly stated:

> The next question is that of the standards by which a bankruptcy court properly may determine that a filing is not in good faith and hence subject to dismissal at the threshold. We begin consideration of this question by observing that this power, while essential to proper administration of Code policies and implicit in the statute itself, is obviously one to be exercised with great care and caution. *Decisions denying access at the very portals of bankruptcy, before an ongoing proceeding has even begun to develop the total shape of the debtor's situation, are inherently drastic and not lightly to be made.*

*Id*. at 700 (emphasis added). That rationale would not seem to apply where a debtor has had numerous opportunities to reorganize successfully through several prior cases and has failed to do so. Here, for example, given his history in this court, in no way can the Debtor be said to be "at the very portals of bankruptcy," and his financial and personal situation has been fully developed through numerous hearings and proceedings. Moreover, the objective futility prong requires the court to consider whether "there exists the realistic possibility of an effective reorganization." *Id*. at 698 (citation and internal quotations omitted). This is often a time-

consuming and costly inquiry, and one that the creditors and the UST may have just undertaken in a prior case through the application of the dismissal standards of 11 U.S.C. §1112(b).

This case highlights the point.  The Debtor does not dispute his prior filings or the actions he took in those cases.  He argues that he was adequately sanctioned for those actions by the dismissal of those cases.  He disputes that he filed this case with subjective bad faith, but argues that, even if the court concludes that he did, his prior cases and the actions he took in those cases are beside the point because this case is not objectively futile.  The Bank and the UST, who three months earlier went through an extensive evidentiary hearing that determined the Debtor could not confirm a plan, now face the same task.  Taken to its logical conclusion, a debtor could simply continue to file bankruptcy cases until changed circumstances or blind luck allow him to show a realistic prospect of reorganization.  The court concludes that, if faced with a bad faith serial filing case - especially one with gross malfeasance by the debtor in the preceding case - the Fourth Circuit would determine that a bankruptcy court has discretion to dismiss the case upon a showing of subjective bad faith without the need to determine objective futility.  *See In re Delray Assoc. Ltd. P'Ship*, 212 B.R. 511, 515 (Bankr. D. Md. 1997) (in a chapter 11 case that was filed after a plan was confirmed in a prior case, noting that the facts of *Carolin* did not include a serial filing and suggesting that objective futility is not necessary for a court "in the exercise of its equitable powers [to] dismiss a serial chapter 11 case which was filed in bad faith").

However, even if the objective futility standard applies the court concludes the case should be dismissed.  As stated above, at the June 20, 2013, hearing in the 2012 Case, the court determined, as a matter of fact, that the Debtor lost several thousand dollars in the first six months of 2013 and that his income was not sufficient to fund a confirmable plan.  The court also determined that the Debtor's income was insufficient to allow him to stay current on his

post-petition child support payments or his tax obligations. These findings, to the extent applicable here, establish objective futility.

These findings were made less than three months before the Debtor filed the 2013 Case and are sufficient to shift the burden of persuasion to the Debtor on the issue of objective futility. The Debtor testified, without any documentary or other support of any kind, that his company has entered into millions of dollars of contracts with third parties that will enable him to make plan payments with ease. But the Debtor was well aware that his credibility would be challenged due to, not the least of which reasons, his 2012 guilty plea to four counts of federal wire charges in connection with providing materially false information on loan applications, and his gambling with estate funds. The court does not accept his bare testimony as overcoming the concrete evidence from just three months earlier that established his inability to confirm a plan.

## Conclusion

For the foregoing reasons, the court will dismiss the case.

cc:   Debtor
      Debtor's counsel
      United States Trustee
      All interested parties

**END OF MEMORANDUM**

11